## KETCHAM *vs.* BROOKS and others.

1. The proof of the loss of a deed, in this case, *held* to be sufficient to warrant the admission of secondary evidence of its contents.

2. Such secondary evidence *held* to establish the fact that the grantee took his deed with full knowledge that it contained a covenant of assumption of a mortgage upon the property conveyed, and with knowledge of the nature of the liability thereby assumed.

3. Where the object of the bill is not to prove title by a deed alleged to be lost, but to prove a covenant of the grantee contained therein, it is not necessary that the subscribing witness to the deed or the officer before whom the acknowledgment was taken, should be produced, or that there should be evidence of the impracticability of obtaining their testimony, other satisfactory evidence of the covenant being offered.

4. A parol assumption by a grantee of mortgaged premises, made at the time of the conveyance to him, makes him liable to a personal decree for deficiency.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. D. A. Ryerson,* for complainant.

*Mr. W. S. Whitehead,* for defendant Mandeville.

THE CHANCELLOR.

The contest in this case is between the complainant and Frederick B. Mandeville, the only defendant who has answered, as to the liability of the latter to a personal decree requiring him to respond for deficiency. The complainant, in his bill, alleges that Dr. Mandeville, on the conveyance of the mortgaged premises to him by Brooks, the mortgagor and obligor in the bond which the mortgage was given to secure, assumed the payment of the mortgage. Dr. Mandeville, in his answer, admits the conveyance by Brooks to him, but says that he does not believe that in the deed to him from Brooks, there was any clause, as alleged in the bill, by which he assumed to pay the principal of the mortgage, and he further says that it was not his intention so to do, and further, that

'he believes that the deed contained only a clause signifying
'that the conveyance was made "subject to" the mortgage.

The deed from Brooks to Mandeville is lost, and objection
'is made on the part of the latter that the proof of loss is
'insufficient to warrant the admission of secondary evidence of
'its contents. The deed was delivered by Brooks to Mande-
ville, and the latter testifies that subsequently and a short time
after he received it, he gave it to Samuel Klotz or John
K. Dunlap, real estate brokers, in order that the person to
whom he gave it might, from it, prepare a deed from him to
Mrs. Caroline Bodwell, with whom he had agreed to exchange
the mortgaged premises for certain property of hers. That
exchange was made, and the mortgaged premises were accord-
ingly conveyed by Mandeville to Mrs. Bodwell. He testified
on his examination as a witness in this suit, that he did not
know where the deed was; that he had never put it on record,
and that he had, at that time, no knowledge of its existence.
Klotz testifies that he has no recollection of having ever
received it from him, and he says that though he has no recol-
lection of having ever seen it, he has searched for it in his
office, but cannot find it. Dunlap testifies that he is under
the impression that he received it from Klotz, but does not
know what he did with it, and that he has searched for it, but
cannot find it. Philander Bodwell conducted the negotiation
for exchange between Mrs. Bodwell, his mother, and Dr.
Mandeville. He signed the agreement for her between them,
for the exchange. He testifies that the exchange was in
pursuance of that agreement, and that his mother was not
present at the execution of the agreement or the exchange of
deeds. He further says that he has no recollection of the
deed from Brooks to Mandeville, or of ever having seen it,
and swears that he has no knowledge of its existence. Dr.
Mandeville, in his answer, says that having, at the date of the
conveyance to Mrs. Bodwell, neglected to record his deed
from Brooks, he delivered it to her to be recorded at the same
time with his deed to her. His statement is not sustained by
any proof, and it appears to be incorrect. The complainant

has made sufficient proof of loss and diligence, to warrant the admission of secondary evidence of the covenant of assumption alleged to have been in the deed. The counsel of Dr. Mandeville insists that the subscribing witness to the deed should have been produced, or the officer before whom the acknowledgment was taken, and that because of the absence of the testimony of either of them, without evidence of the impracticability of obtaining the testimony, the proof of the deed is insufficient. It is to be observed that the complainant is not seeking to prove title by the deed, but to prove the covenant of the grantee contained therein. The answer admits the conveyance by deed, and Dr. Mandeville testifies that the mortgaged premises were conveyed to him by Brooks and his wife, by deed, and Brooks testifies to the conveyance, by deed, and the contents of the deed, including the covenant in question. The deed, for the purpose of this suit, was sufficiently proved by the testimony of Dr. Mandeville and Mr. Brooks. The assumption might have been by parol merely, and it would have been good; *Wilson* v. *King*, 8 *C. E. Green* 150; *Bolles* v. *Beach*, 2 *Zab.* 680; having, as it is alleged, been made by covenant, (by statement contained in the deed from Brooks to Mandeville,) it was incumbent on the complainant to produce the covenant, and in case of his inability to do so, to prove the loss and present secondary evidence of the covenant. This he has done. Mr. Brooks swears positively to the existence of the covenant in the deed, and to the very words of it. It appears to have been in the form commonly in use among conveyancers in Newark, where the papers were drawn. He testifies, also, to the circumstances. He says that when the deed was delivered, Dr. Mandeville objected to the covenant, saying, "I don't know about assuming the mortgage;" that upon Brooks' or Conselyea's, (the latter was Brooks' partner,) referring to the fact that he was requiring Brooks to assume the mortgage which was on the property which he was conveying to the latter in exchange for the mortgaged premises, and saying that, therefore, he must assume the mortgage on the property which he was receiving, he folded up the deed, slapped his

thigh, and said, " I suppose I shall have to stand it: give us your order for the horse." He was to receive in the exchange, from Brooks, a horse, wagon and harness. Conselyea corroborates Brooks. He says that his impression is that Dr. Mandeville objected to assuming the mortgage, and that Brooks and himself tried to persuade him that it was all right. He further says that his impression is that both deeds were drawn previously to the meeting at which the conversation which he refers to, and in part relates, took place, which was when the deeds were exchanged. The complainant testifies that after the conveyance to Dr. Mandeville had been made, he called on the latter to ascertain whether he had assumed the mortgage, and expected to pay the interest. He says he told Dr. Mandeville that the mortgage had come into his possession, and that he had been informed that the latter had assumed it; that he wished him to state whether he had assumed it or not, as the interest was due, and if he had assumed it, he wished him to pay the interest. He swears that Dr. Mandeville replied that he had assumed it, and expected to pay it when it became due, and requested him to call in a few days again, and he would pay the interest. Dr. Mandeville, indeed, swears that he did not agree to assume the mortgage, but he will not say that the covenant was not in the deed. He said to the complainant's solicitor that he did not know whether it was in or not, and when examined as a witness in this suit, he said he was not positive whether the covenant was in the deed or not. He says it is possible that such a conversation as that testified to by Brooks, in which he is said to have slapped his thigh, saying, " I suppose I shall have to stand it: give us your order for the horse," may have occurred, as the fact of Brooks' assuming the mortgage on his property was used as an argument. He says, however, that in this admission he does not mean to admit that he at any time said he " would have to stand it," in reference to assuming the mortgage. He insists that the deed from Brooks to him was not delivered as the latter and Conselyea both say it was, in the office, but that the latter brought it out to him as he sat in his wagon

before the door of the office. He cannot tell, however, where his deed to Brooks was delivered. ·He cannot tell who drew it, and he cannot remember whether the covenant of assumption was in the deed from Brooks to him or not. He says the deed from him to Brooks was not delivered at the same time that the deed from the latter to him was delivered, according to his recollection, but he cannot tell whether the deed from him was delivered before or after the deed to him was delivered, nor can he tell whether there was an adjustment of interest between him and Brooks. He was examined in January, 1876, two years after the transaction. His memory appears to have been at fault. The weight of the evidence is that he covenanted to assume the mortgage, and that he did so, understandingly. It is clear that the deed, when delivered to him, contained the clause; that the subject was dropped between him and Brooks and Conselyea, and that the deed was delivered to him without alteration. As before stated, he will not say that when delivered to him it did not contain the clause. If it did, he must be held to have accepted it accordingly. Under the evidence, I am constrained to conclude that he did so, not only with full knowledge of the fact, but of the nature of the liability thereby assumed. There will be a decree against him for deficiency.